Our fifth case for this morning is United States v. Karst, Ms. Rameh. My name is Colleen Rameh, and I'm here on behalf of Shawn Karst, the defendant appellate in this case. This court should vacate the revocation judgment in this case because it was procedurally flawed in two significant ways. First, the revocation petition was not properly before the court, as it erroneously reinstated after dismissal without a finding of probable cause in contravention of the plain language of Rule 32.1b1c. Ms. Rameh Is that required if the person is not confined? Ms. Karst Your Honor, the rule states that there is no—I mean, the rule does not provide for a right to a preliminary hearing if the person is not confined. Ms. Rameh So why are we worrying about probable cause from the time this moves to Chief Judge Griesbach, who doesn't change the fact that as a result of the proceeding the day before, before the magistrate judge, Mr. Karst is in fact not confined. And Judge Griesbach says, if you want me to hold some more hearings, I will. Nobody wants him to do that. So Mr. Karst remains not confined, you know, at liberty, and then the actual hearing comes up. So I don't know why—I don't understand where probable cause fits in. Ms. Rameh Well, Your Honor, the problem comes in when the magistrate judge conducted the preliminary hearing, Mr. Karst undisputably had a right to the preliminary hearing. The magistrate judge found no probable cause based on a lack of evidence presented to the judge, in part on a stipulation from the government that the evidence they wanted to present was not admissible. And then the rule states that the remedy for finding of no probable cause is that the court shall dismiss—or the judge shall dismiss the petition. But what happens here, then, is that somehow this comes to the attention of Chief Judge Griesbach, who looks at 28 U.S.C. Section 636, the Magistrate Judges Act, and says decisions by magistrate judges must be, you know, kind of reviewable—I'll just use that term—reconsidered, is another term you could use, by the Article III judge. And he has some problems with the way that went on, so he exercises that authority. So in a sense, he sets aside the results of the magistrate judge—Magistrate Judge Sigel's hearing and calls his own hearing. So I have a lot of trouble thinking of a regime under which an Article III judge can't reconsider a decision made by a magistrate judge. Ms. Rameh Your Honor, we certainly don't argue that the judge didn't have authority to reconsider the decision. The problem here comes in that there was still never a finding of probable cause at that hearing. But once he's reconsidered it, though, isn't everything back on the table? Like, did he—did the man need to be detained while this revocation procedure is going on? I don't know why we're stuck in this probable cause loop. Well, he has reconsidered the—an evidentiary ruling, but the—I mean, this process effectively makes a finding of no probable cause—like, the remedy for it, just release from detention. But the first hearing, the hearing before the magistrate judge, is on the question whether probable cause exists to revoke. It's sort of like a preliminary hearing, and you don't need to worry about probable cause to revoke if what you wind up with is you're at liberty until the actual merits hearing on revocation takes place. I—I understand. I understand, Your Honor, and that's certainly what the district judge concluded. We just— So why would that be wrong? There just doesn't seem to be any mechanism under Rule 32.1 to decide that even though no probable cause has been shown, at—when a petition has been dismissed for lack of probable cause, we can reinstate it without actually finding probable cause. But the transcript that—when Chief Judge Griesbach is interacting with Ms. Hala Valdez, he's saying, educate me. If there's more here that needs to be done, we'll brief. And then there's this three-month gap until December. So there was a time frame within which Mr. Carr's counsel could have pressed that issue but didn't. Sure. And, Your Honor, I think in part what happened in the district court is that Ms. Hala Valdez, first of all, was taken by surprise by this hearing. It was called sua sponte by the court. And then she very quickly thereafter became ill and the case was transferred to a new counsel who did not necessarily understand everything that had happened at that preliminary—at either of those hearings because I don't believe the transcripts were prepared and all of that. So while I agree that it—ideally, Ms. Hala Valdez did say that she was planning to follow up with further research and further argument. So why wasn't the answer, though? Judge Griesbach offered, I think, twice to hold another preliminary hearing. And presumably that would have been a vehicle for Mr. Carr's new counsel to have said, there's no probable cause for any of this. The whole idea of revoking probation should be dropped. Right. It's unclear from the record whether the new counsel even knew about that. I don't know what communications Ms. Hala Valdez had with new counsel given that she was ill. But I would also, given my limited amount of time, I'd also just like to quickly address the second reason that revocation—the judgment of revocation should be vacated was that the court—the court found that the—that Mr. Carr's violated the condition of supervised release that he not commit another crime. But the findings were essentially that he—the reason he found that were that he had—he basically had conspiracy liability for the crime of shooting at another person. And his own factual findings were not consistent with that—with that legal conclusion. The conspiracy liability as a party to a crime in Wisconsin requires an agreement between the parties to direct their activities towards this particular criminal objective and that each member consciously intend the realization of that objective and have a personal stake in the venture. The court found no specific criminal objective that Mr. Carr's agreed to, nor evidence that he had an individual stake in such an objective or intended—specifically intended a particular objective. The court actually found that his objective was unclear, found that there was maybe some agreement to frighten or shoot at the victim, but there was no finding of a specific stake that he had in that or any kind of meeting of the minds that these individuals had planned on accomplishing. So your argument is not—conspiracy itself is not a crime. Your argument is that there was insufficient factual findings by Chief Justice Griesbach with regard to the conclusion that there was a conspiracy? Yes, Your Honor. Would you like to save Justice Shade for rebuttal? Yes, thank you, Your Honor. Good morning, Mr. Koenig. Good morning, and may it please the court, my name is Jonathan Koenig, and I appear on United States this morning. Just to begin with the last point my opponent made about state law, that is respectfully an argument for remanding this case for resentencing. It isn't really a direct challenge to the revocation or any of the issues in this case. So I'll tell you what bothers me about this case is much more the constellation of issues around the sentence, because until you have specified what the state crimes were, you can't categorize them. And if you haven't categorized them, you're not going to be able to look at the policy statements that would advise what sentence should accompany the revocation of supervised release. And the judge doesn't bother to do any of that anyway. And so don't we need to at least get that done right? You're absolutely right, Your Honor, and that's one of the reasons we conceded error on the procedural sentencing issue. In addition to not directly addressing the guideline construct, the judge was a little unclear as to which state law had been violated. And it could matter. I mean, it could advise a different range. Yes, and I tried to address that in a footnote in my brief. Right. My understanding is that in Wisconsin, you can be guilty of disorderly conduct as party to a crime, which, as you can imagine, doesn't take a whole lot to prove. But that would come in lower on the guidelines than some more serious crimes like battery or the gun-related offenses. Judge Griesbach said, I think, that he viewed the evidence and he thought that Mr. Karst intended to frighten or shoot this fellow. And that's a little open-ended. That needs to be cleared up. And I'll tell you another thing that confuses me quite a bit about Judge Griesbach's decisions here. On the one hand, you read the sentencing transcript and he seems very upset. He thinks this is a really pretty serious set of behaviors that Mr. Karst did. He thinks he's lying. He thinks he knew these people. He sort of builds a whole story out of what strikes me as awfully thin evidence. But that's what he thinks. And so he says, you know, you need a serious sentence on revocation to deter you from this. And then a few weeks later, he says, oh, but you're not that much of a problem for the community. I'm going to let you stay out until the appeal is over. And I was like, well, what is it? You know, he's a danger to the community or he isn't. I'm not sure. I think the latter decision may have been driven partly by the relative brevity of the sentence in terms of how long an appeal takes. 30 months? I don't know. It's a little contradictory, you have to admit. Perhaps. But anyway, we do concede that the case needs to go back for resentencing. We don't think it needs to go all the way back to the beginning of the case. And respectfully, as we argue in our brief, the court can't really reach that outcome without doing violence to the district judge's authority under the Constitution and Section 636, the Magistrate Judge Act. And we would rely on the Brigham case from the Fifth Circuit. Respectfully, we would argue that we win under either a plain error standard or a de novo standard on the strength of that case alone. I'm happy to answer any additional questions that you have. I see none. So, we thank you. Anything further, Ms. Rameh? Thank you. Just shy of two minutes. Thank you, Your Honors. Just quickly, to clarify our request, we are looking for a full remand because we do think that the failure of the judge to find facts that support a true violation of law, given the bizarre and very particular nature of the evidence that was in front of the judge, Mr. Karst, indisputably, did not actually, by his own hand, commit this crime. The judge just seems to think he probably knew maybe something was going to happen. And that is not enough to establish the scarcity of the evidence. But the judge does make credibility findings. So, Mr. Karst says, I just met up with these people and decided to go to lunch. And then we have this weird side discussion about pizza being ordered and eaten or not. But basically, Judge Griesbach doesn't believe Mr. Karst that these are people that he just happened to randomly run into. Then from there, he thinks, well, so maybe he's part of these disputes between motorcycle groups. I don't know enough about motorcycle bans in Wisconsin. Maybe Judge Brennan can enlighten me. I defer to Mr. Koenig. Well, what we have here, Your Honors, like we said, there isn't really that much information about what any particular dispute was between rival gangs. No one else testified. The only evidence we had was surveillance footage of the incident in question. And so there really isn't much evidence at all of anyone's motives or what, in particular, Mr. Karst knew or did not know about what was about to happen. And so we do ask that this be sent back. And given not only the kind of bizarre procedural issues that arose at the beginning, but the judge's failure to find with specificity an actual violation of law and the multiple errors that Your Honor has identified on its sentencing, we do ask that the court exercise its discretion and remand for further proceedings in front of a different judge. All right. Thank you very much. Thanks to Mr. Koenig. We will take this case under advisement.